Giefen. J.
(Swing. P. J., and Jelke, j., concur.)
This was a petition originally filed for the construction, of the will of A. W. Frank, deceased. It came on for hearing in this court, however, upon a supplemental petition which involves the distribution of the rents and income of a business block situated on Race street, between Sixth and Seventh,, and what effect the agreement that was made by the widow and the children, and attached to this supplemental petition,, had upon the duties of the trustees undei the will; whether,, or- not, they were modified thereby.
The third clause of the will provides that.:
“I give to my wife the use of our residence now occupied, by us as long- as she remains my widow. I also give'to her absolutely one-third of the net rents and income of my real estate as the same accrues during her natural life in lieu of and as her dower and distributive share of my estate.”
Section seven of the will provides that:
“All real estate in the city of Cincinnati subject to my wife’s interest therein as above I give and bequeath and devise to my wife Margaretta Maria Frank, my son Theodore and my brother Godfrey, and to the survivors, or survivor of them,, in trust .however for the following uses and purposes that they hold and manage the same and pay over semi-annually the ner rents and income thereof in equal shares to our children or the issue of any deceased child per stirpes, until the death of the last of our children with full power to improve if deemed proper any such piece of real estate and to give a mortgage on any of it to raise money for making such improvement, in which case however, the income of the property so improved must first be applied to pay off such mortgage.”
*220 ■It is the latter part of this clause of the .will that is involved in this suit, for the reason that the agreement spoken of between the widow and the children was one providing for the. improvement of this lot upon Race street, and that, in pursuance of this agreement, the trustees did erect a six-story business block upon this strip of ground fronting 71 feet on Race street. Of this frontage 46 feet was the family residence spoken of in item three of the will, the use of which was given to the widow for her life, and the adjoining 25 feet were no part of the residence property.
It was agreed, in this contract attached to the supplemental pétition, that the income from the property so improved should be applied, after the payment of necessary expenses, after the three years, $5,000 each year to the payment of the principal, and the balance remaining two-thirds should be paid to the widow.
It is contended that this agreement between the widow and children and the action of the trustees thereunder can not be carried out, for the reason that it is contrary to the will of A. W. Frank. And undoubtedly it does run counter to that provision of the will which requires, where improvements are made by the trustees, that such improvements shall be first paid out of the income, before the distribution to the children and widow thereinbefore provided for shall be carried out.
The will abo provides that, at the death of the last child, the real estate shall be conveyed by the trustees, in fee, to the grandchildren. So that this provision would also interfere with the rights of the grandchildren, under the will. Because, if the income is not applied to the payment of the money borrowed for the erection of these improvements, and that indebtedness still exists at the death of the last child, the grandchildren receive the property with the incumbrance made by and for the benefit of the children and-the widow. ■
The court, therefore, has come to the conclusion that it would be opposed to equity and unlawful for the court to undertake to direct the enforcement of this agreement, as it is directly in conflict with the provision of the will of A. W. Frank.
Undoubtedly the parties to this agreement acted in good faith'-find supposing it for. .the best interests of themselves as . well as'the grandchildren;, but we are inclined to .think that. *221 • it might, in a certain event, be to the advantage even of the grandchildren to carry out the agreement; but, it being uncer"tain, and also being opposed to the specific provision of the will, the court does not feel authorized in attempting to enforce ; such an agreement.
That being the case, the next question is, what can the court • do towards the enforcement of the rights of the widow and the ■ children under the will ? They can not be restored to the same position they were in before. But it is the'duty of the court to ■ so construe them as nearly to their former position as may be.
The third provision of the will, we think, clearly — although -some of counsel express a doubt, in the argument, — gives to ■ the widow a life estate in the residence property. By the terms •• of this agreement she surrendered possession of this property. ' The residence, itself, was torn down, and also the building upon the 25 feet adjoining thereto, and this new structure ■ erected in their place.
■ Counsel for the widow contend that she would be restored to her rights by ascertaining the value of the residence property, ■ the value of her one-third interest in the net income from the 25 feet adjoining, and allowing her such proportion of the ‘rents as the value of these two pieces of property bear to the ■ entire property. In other words, the testimony showing the value of the naked ground to be $2,000 per front foot, the ■ cost of the building being $65,000, and that the building on the residence property was worth $25,000, that her share would ' be something like $132,000, and her proportion would be as 132 to 225 or 230; something like that. I forget, just now, what the figures are. But they embrace in that the residence building, which was torn down. There is not any testimony before this court to show that any of the material' that came from that torn-down building entered into the construction of the new building; and, although-it may have been worth •' $25,000 as it stood on the old lot, it does not appear that it has any value in connection with that property as it now exists. Consequently, we must eliminate the value of the residence, 'itself, from our calculation.
The 46 feet, as we have said, belonged to the widow for life! ; So long as she occupies this property, although there is a gen *222 eral provision in the will permitting the trustees to improve,, they could not improve this 46 feet. Consequently, when it was improved it was with the consent of the widow. And our conclusion is that, as to that 46 feet, the widow is entitled to-such proportion of the rents derived from this property as the-value of that particular lot represents.
It is insisted, as I have already said, that that same rule-should apply to the 25 feet adjoining the residence property. But that was deeded, as we understand this will, absolutely to-the trustees with power in them to improve for the benefit of the estate, if they saw fit.
But counsel call our attention to that provision of the will1 which provides that:
“If from the need of new improvements on my city real estate; or from any other cause, it may be found difficult to ascertain for my wife the one-third of the net rents or income-of my real estate, at the request of any party interested my wife is to have the same set off to her in any such piece of' real estate as comes under our statute for setting off dower,, the dower to her set off to be estimated independent of any improvements that may have been made after my death.”
We confess that it is difficult, after reading this claim, it was-intended, that the wife, independent of improvements made by the trustees, was nevertheless to have her one-third interest in the net rents and income of the real estate. But we must remember that the situation, as it now presents itself, was brought about by an agreement between the widow and the children. The children necessarily, by reason of this agreement, must surrender their right to the income on this 25 feet as well as the 46 feet, at least for the present, until this incumbrance of $55,000 is removed. And we think that, the agreement having been entered into by the parties, and this situation having been brought about by the widow and the children, the-widow should unite and surrender some of her rights, along-with those of the children; and that she is, therefore, not entitled to that proportion of the rents and profits that the value, of this 25 feet bears to the whole.
So that it reduces itself to the value of the 46 feet. As before said, the testimony is undisputed that the value of that. *223 was $2,000 per front foot, which- would make $92,000 for the 46 feet, and $50,000 for the 25-feet, and $65,000 the cost of the new improvement, eliminating, as before said, the value of the residence, which was destroyed in removing from the lot. The ratio, therefore, would be as 92,000 is to 207,000; or, in other words, nine-twentieths of the net income after paying the taxes, insurance and repairs.
Sidney G. Strieker and H. P. Kauffman, for Plaintiff.
L. C. Black and C. C. Archer, for Defendant.
The decree, therefore, will be in accordance with this finding.

Note — Sidney C. Strieker and Henry P. Kauffman, for Defendants: Under the seventh item'of the will, the trustees are given “full power to improve, if deemed proper, any such piece of leal estate, and to give a mortgage on any of it to raise for making such improvement, in which case, however, the income of the. property so improved must first be applied io pay off such mortgage.”
The trustees can not avoid the force of this limitation. The trustees can have no greater powers than the terms of the will confer. Their powers are necessarily derived from the will, and any act or agreement in violation of the provisions of the will is void and of no effect. Therefore the contract between the trustees and the heirs, stipulating for a different application of the income, is in direct violation of this provision of the will. Trustees have only such powers as are conferred by the terms expressed in the instrument creating the trust, or as are necessarily implied from the terms expressed. Therefore, any contract by a trustee in excess or violation of the powers conferred upon him, is simply nugatory and void, and cannot be enforced.
If the contract is void, the will alone must control, and such application and distribution, of the income arising from this property must be made as .is directed by the terms of the will.
i2-) The fact that the widow gave her consent to the contract does not estop her from now claiming the benefit of the provisions in the will, or now asking that the court construe the will according to the law. A perspn may be estopped from claiming that a fact is otherwise than he has represented it, but if he has made no misrepresentation of fact, he has a right to rely upon his legal rights, whatever they are, and the court will_ preserve and enforce them. A person is never es-topped from claiming the benefit of a legal proposition, as in this case the invalidity of a contract, Organ v. Stewart, 60 N. Y., 420.
Where trustees contract beyond the scope of their powers, the contract :s void They may -at any time refuse to continue the contract, and cannot be precluded or estopped from denying the validity of the conti act. Bruer v. Hayes, 22 Bull., 150-151. If the trustees cannot be estopped, then none of the parties can be estopped, for an estoppel, *224 to be effective, must be mutual. Holt v. Lamb, 17 Ohio St., 374, 387; Bradford v. Beyer, 17 Ohio St., 388, 395; Hemminway v. Davis, 24 Ohio St., 150, 164.